IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

No. 99-50789
Summary Calendar
_____

ROBERT CARLETON MITCHELL,

Plaintiff-Appellant,

versus

UNITED STATES OF AMERICA; BUREAU OF PRISONS;
SLADE, Warden; SERRANO, Dr.; LICON, Ms.;
VILLANUEVA, Mr.; FERNANDEZ, Mr.,

Defendants-Appellees.

--------------------
Appeal from the United States District Court
for the Western District of Texas
USDC No. EP-97-CV-450-H
--------------------
March 6, 2000

Before REAVLEY, SMITH and DENNIS, Circuit Judges.

PER CURIAM:[*]

Former federal prisoner Robert Carleton Mitchell appeals from the grant of summary judgment for the defendants in his civil action. For the reasons that follow, we affirm the judgment of the district court.

Relevant to the district court's disposition of any possible claims under the Federal Tort Claims Act (FTCA), 28 U.S.C. §§ 2671-2680, Mitchell contends that exhaustion of prison administrative remedies would be futile. He provides no specific

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

allegations indicating that exhaustion would be futile; his unsupported assertion that exhaustion would be futile is insufficient to demonstrate that the district court erred by disposing of any FTCA claims on exhaustion grounds.

Regarding his claims brought pursuant to *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), Mitchell contends that Warden J.E. Slade and Dr. Jose Serrano were deliberately indifferent to his serious medical needs because he was not provided with a special diabetic diet; because oral surgery to treat damage to his teeth was delayed; because his chronic back condition was not treated; because treatment of his prostate cancer was delayed; because he was never treated for dizziness; and because nothing was done in response to an abnormal electrocardiogram (EKG) reading. The evidence indicated that the defendants were not deliberately indifferent to Mitchell's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

Mitchell contends that Marti Licon and Pifas Villanueva delayed his release on parole by refusing to submit his second release plan when first asked; submitting his second release plan to the wrong probation office; failing to move quickly enough on the relevant paperwork; and forcing him to spend time working up a third release plan. A prisoner has no constitutional right to release on parole. *Greenholtz v. Inmates of the Nebraska Penal and Correctional Complex*, 442 U.S. 1, 7 (1979). Statutory and regulatory language, however, may create a liberty interest in release. *See id*. at 12. Officials involved in the parole

process may delay a tentative release date pending preparation of a suitable release plan. *Anton v. Getty*, 78 F.3d 393, 397 (8th Cir. 1996); 28 C.F.R. §§ 2.12(d), 2.28(e), 2.23. The evidence in the record demonstrated no constitutional violation.

Mitchell contends that Warden Slade, Villanueva, and Juan Fernandez sabotaged his finances and deprived him of the ability to purchase needed health items, and that they were culpable for breach of contract, by attempting to change the terms of his Inmate Financial Responsibility Program (IFRP) plan and forcing him into IFRP refusal status, resulting in him receiving maintenance pay of $1 per month. "When a prison regulation impinges on inmates' constitutional rights, the regulation is valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). The IFRP serves the legitimate penological interest of rehabilitation, and has been upheld against constitutional attack. *McGhee v. Clark*, 166 F.3d 884, 886 (7th Cir. 1999). The regulations relevant to IFRP plans allow prison officials to place prisoners who decline to comply with their IFRP plans to be placed on maintenance pay and otherwise sanctioned. 28 C.F.R. § 545.11(d). The regulations also allow prison officials to accelerate payments and to count funds from outside the prison as available resources. *McGhee*, 166 F.3d at 887; § 545.11(b). The evidence in the record demonstrated that prison officials complied with the relevant regulations; there was no constitutional violation regarding Mitchell's IFRP plan.

Finally, Mitchell contends that Fernandez stole funds from his account, precluding him from purchasing needed health items. Mitchell believes it inconceivable that a prison official could confiscate a prisoner's funds by mistake. Construing his brief liberally, *Price v. Digital Equip. Corp.*, 846 F.2d 1026, 1028 (5th Cir. 1988), Mitchell contends that Fernandez deprived him of due process by confiscating his funds.

A negligent deprivation of property does not give rise to a violation of the Due Process Clause of the Fourteenth Amendment. *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986). Nor does such a deprivation give rise to a violation of the Fifth Amendment's Due Process Clause, the basis for a federal prisoner's due process claim in a *Bivens* action. *See Sterling v. United States*, 85 F.3d 1225, 1227 (7th Cir. 1996); *O'Neal v. Eu*, 866 F.2d 314, 314 (9th Cir. 1988). The record indicated that the deprivation in Mitchell's case was negligent; the district court did not err by granting summary judgment on Mitchell's claim.

AFFIRMED.